FRAKER v. A. G. HYDE & SONS.

(Supreme Court, Appellate Division, First Department.  July 8, 1908.)

1. CORPORATIONS — CONTRACTS OF EMPLOYMENT — EVIDENCE — RESOLUTION OF CORPORATE DIRECTORS.
   A resolution of a board of directors of a corporation, providing for the employment and compensation of plaintiff, is evidence of his employment and compensation.

2. SAME—CONTRACTS—VALIDITY—CONSIDERATION.
   Defendant corporation hired plaintiff for one year at a stated salary; the contract of employment providing that it might be annulled at any time by either party on 30 days' written notice.  Subsequently defendant's board of directors passed a resolution giving plaintiff 7 per cent. of the net profits of the business for the year, in addition to the salary. *Held*, that plaintiff's abrogation of the privilege of annulling the contract of employment was a sufficient consideration to support the new agreement made by the board of directors, whereby he was to receive a percentage of the profits, and having continued in the employment for the whole year upon defendant's promise so expressly given, and having fully performed his contract, he was entitled to receive the amounts so provided.

Appeal from Trial Term.

Action by E. Porter Fraker against A. G. Hyde & Sons.  Judgment of dismissal, and plaintiff appeals.  Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Lenehan & Dowley (John J. Lenehan, of counsel), for appellant.

Decker, Allen & Storms (James J. Allen, of counsel), for respondent.

CLARKE, J.  The complaint alleges that the defendant is a domestic corporation; that between January 8, 1905, and March 5, 1905, the plaintiff entered into an agreement with the defendant to work for the defendant for one year from January 1, 1905, to December 31, 1905; that the defendant promised and agreed to pay to the plaintiff for his said services the sum of $10,000 per annum and 7 per cent. of the net profits of the business of the defendant for the year 1905, after allowing for the dividend of 6 per cent. upon the capital stock; that the plaintiff entered upon the performance of his duties and duly performed the same; that defendant paid plaintiff the sum of $10,000, but has paid no part of the said net profits, although demanded.

The plaintiff testified that he worked for the defendant during the entire year of 1905; that he had charge of the selling of the goods, the entire charge of all the salesmen; and that it was his duty as treasurer to countersign checks or such documents as were put before him to countersign.  He offered in evidence a letter, dated March 4, 1905, addressed to him:·

"We take pleasure in advising you that at a meeting of the board of directors of this company, held on March 4th, it was decided to apportion to you 7 per cent. of the net profits of the business for the year 1905, after allowing for the usual dividend of 6 per cent.  This is done in recognition of faithful services rendered to the company in the past, and as a stimulus for you to put forth your best energies in your future conduct, thereby showing the

company that they have not misplaced their confidence by the action taken. Trusting that the year may be an exceedingly successful one, we are,

"Yours very truly,    A. G. Hyde & Sons,

"Per Seymour J. Hyde, President."

He was then asked:

"Did you have a conversation with Mr. Hyde prior to the signing of that letter? If so, when?"

To which he answered:

"Yes, sir; on the 9th of January. Q. In reference to a percentage of profit of the defendant's business? A. Yes, sir. Q. Will you please state the conversation?"

That was objected to, and thereupon the defendant offered in evidence the following paper:

"Agreement between A. G. Hyde & Sons and Mr. E. P. Fraker. This agreement witnesseth that A. G. Hyde & Sons have agreed to employ Mr. E. P. Fraker, and that Mr. E. P. Fraker has agreed to serve A. G. Hyde & Sons, for the term of one year from January 1, 1905, to December 31, 1905, both inclusive. A. G. Hyde & Sons agree to pay Mr. E. P. Fraker a salary of $10,000 per annum, payable semimonthly on the 15th and 30th of each month. It is understood that this contract can be annulled at any time by either party giving 30 days' notice in writing to the other party.

"E. P. Fraker.

"Dated January 9, 1905."

Counsel for the defendant said:

"This instrument is complete on its face, and whether or not it is complete or partial is a question of law, and your honor, on looking at this paper, will say whether or not it is a complete contract between the parties."

It is quite evident it is not complete on its face, because it is simply signed by Fraker. There is no signature of Hyde & Sons, and no indication upon its face of its ever having been accepted. But perhaps we may assume that a similar paper signed by A. G. Hyde & Sons was in possession of the plaintiff. The claim of the plaintiff was that the suit was brought for a percentage of the net profits; that the paper dated January 9, 1905, only covered the salary; that the part of the contract relating to the $10,000 was put in writing, but the part relating to the 7 per cent., although agreed to, was not put in writing until the 4th of March, and that he was entitled under the circumstances to supplement the writings by oral testimony to show the entire transaction and the whole contract. After considerable discussion, the court having ruled out all conversations, the minutes of the board of directors at a special meeting held March 4, 1905, were put in evidence:

"The following resolution was offered by Mr. Hyde: 'That in recognition of services to the company in the past, and as a stimulus for further effort in the future, be it resolved that the board of directors apportion the following named gentlemen the specified percentage of net profits of the business for the year 1905, after allowing for the annual dividend, set opposite their respective names: W. W. Coreill, 11 per cent.; E. P. Fraker, 7 per cent.; E. S. Lucas, 1 per cent.; H. Williams, 1 per cent.'—and, having been regularly moved and seconded, it was adopted. The president also recommended that a letter be addressed to each of the above-named gentlemen, informing them of the resolution and the respective percentage apportioned to them. The question of the president's salary was then considered by the board, and on motion, duly made and seconded, the president having retired from the room,

it was resolved that the president's salary for the year 1905 be fixed at the sum of $60,000. The board in like manner fixed the other salaries of officers as follows:  Vice president, $12,500; treasurer, $10,000; secretary, $4,000."

The plaintiff was the treasurer of the company.

The defendant being a corporation, the board of directors controlled its affairs.  The resolution of said board, providing for the employment and compensation of the plaintiff, was evidence thereof.  If we assume that the president, as the executive head of the corporation, had the power of employment, and if we assume that the paper writing dated January 9, 1904, was complete upon its face, and evidence of a prior or collateral agreement with the president for further or other compensation than that expressed therein was improper, yet the board of directors had the power to confirm, or ratify, or enlarge.  That paper provided that it could be annulled at any time by either party giving 30 days' notice in writing to the other party.  The abrogation of that privilege to the plaintiff was a sufficient consideration to support the new agreement made by the resolution of the board of directors, under which he was to receive, in addition to the $10,000 a year as salary as treasurer, 7 per cent. of the net profits, and having continued in the employment of the company for the whole year upon the faith and promise of the company, so expressed by the resolution of the board of directors, having fully performed the contract upon his part, he was entitled to receive the amounts so provided.  We are dealing, not with an executory contract, but with an executed contract; and, as we read this record, the plaintiff sustained the cause of action set up in the complaint.

It was error, therefore, to dismiss the complaint, and the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.  All concur.